IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NEW WORLD PASTA COMPANY<br>Plaintiff, | )<br>)<br>)<br>) | |
| v. | ) | Case No. 4:06CV01749 ERW |
| | )<br>) | |
| INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS, LOCAL UNION NO. 688,<br>Defendant. | )<br>)<br>) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff New World Pasta Company's Motion for Summary Judgment. [doc. #11].

**I. PROCEDURAL BACKGROUND**

On December 8, 2006, Plaintiff New World Pasta Company, ("Plaintiff"), filed suit pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The suit seeks to vacate the September 18, 2006 Arbitration Award, (the "Award"), of Arbitrator James P. O'Grady, ("Arbitrator O'Grady"). On April 27, 2007, Plaintiff filed a Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56(c). In response, Defendant International Brotherhood of Teamsters, Local Union No. 688, ("Defendant"), filed a Motion in Opposition to Plaintiff's Motion for Summary Judgment.[1] This motion is currently before this Court.

---

[1] In Defendant's Motion in Opposition to Plaintiff's Motion for Summary Judgment, Defendant requests summary judgment in its favor. The Court will treat this as a Motion for Summary Judgment and will address both motions in this Memorandum and Order.

## II. BACKGROUND FACTS

Plaintiff is a manufacturer of dry pasta products.[2] In 2001, Plaintiff and Defendant entered into negotiations for a new collective bargaining agreement. The parties created a collective bargaining agreement (the "Agreement") which is the subject of the pending action. In the Agreement, Article 8, Section 1 states that a grievance must be filed within seven days of knowledge of the incident. Article 8, Step 5 requires that the grievance shall be placed on an agenda for a Two Person Adjustment Board. The Agreement also states that a written decision must be issued on all grievances and be submitted within five days from the Board meeting.[3] Additionally, Article 8, Section 6 states that the grievant has thirty calendar days to submit a request for arbitration after written notice of the findings of a Two-Person Adjustment Board hearing. Moreover, the Agreement states that "any of the time limits set forth in this Article may be extended by mutual agreement of the parties, however, any such extension should be in writing." *Pl's Mot. for Summ. Judg.*, Ex 1.

Christopher Wright, (the "Grievant"), worked at New World Pasta as a press operator. On October 7, 2004, the Human Resources Manager, Barbara Dahlen, ("Ms. Dahlen"), sent a discharge letter to the Grievant and Defendant's Business Representative through certified mail. The letter notified the Grievant and Defendant of the Grievant's termination, due to three

---

[2] Although both parties dispute the factual findings, all facts are taken as true from the Arbitrator's Opinion. *Pl's Mot. for Summ. Judg.*, Ex 2. *See United Paperworkers International Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 38 (1987) ("To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.").

[3] The written decision was issued April 12, 2005, eighteen days after the Board meeting. This is contrary to the terms of the Agreement; however, neither party objected to its untimeliness.

consecutive days of unreported absence. Ms. Dahlen also sent a copy of the letter through intra-office mail to the Union Secretary and the Chief Shop Steward.

On October 11, 2004, the Grievant, the Chief Shop Steward, Ms. Dahlen, and the Plant Manager met to discuss the discharge. Ms. Dahlen again informed the Grievant that he had been terminated for a "no-call, no-show" on three consecutive days. The Grievant responded that he had to take care of his ill son. When Ms. Dahlen asked for his son's name and date of birth, the Grievant could not provide the date. However, Ms. Dahlen reviewed the Grievant's benefits file and determined that his son was over the age of 18. Therefore, she explained that the Grievant was not eligible for leave under the Family Medical Leave Act ("FMLA"). Furthermore, she reiterated that the Grievant was terminated. Notwithstanding, her notification, the Grievant requested FMLA paperwork. Ms. Dahlen provided the paperwork and instructed the Grievant to return it within 15 days.

During the meeting, Defendant did not contend that the Grievant should have additional time to file a grievance beyond that explicitly provided for in the Agreement. There was no discussion nor oral agreement regarding a waiver of any of the time limits in the Agreement. Additionally, no discussion occurred between Plaintiff and Defendant regarding leaving the Grievant's case open for any reason following the discharge decision on October 7, 2004. Finally, no written agreement regarding an extension of the time under the grievance procedure was ever executed.

On November 1, 2004, the Grievant was notified that his FMLA leave request was denied and his termination stood. Thereafter, on November 8, 2004, the Grievant filed a grievance challenging his discharge. This occurred thirty-two days after he was terminated and twenty-eight

3

days after his meeting with Plaintiff. Then, on March 25, 2005, 144 days after the formal denial of FMLA, the Two-Person Adjustment Board met to consider the Grievant's action.[4] The Board could not reach an agreement in the matter and deadlocked. However, during the meeting, Defendant stated that the Grievant had phone records indicating he had called Plaintiff. Although the Grievant made this claim, he neglected to bring the records to the hearing. In response, the Plant Manager agreed to allow two weeks to produce the telephone records.[5] Ultimately, Defendant never submitted any records. Defendant did not request an extension of the two week period in order to produce the telephone records, nor did Plaintiff unilaterally extend the time period.

On April 8, 2005, Defendant's representative on the Two-Person Board sent Plaintiff a document certifying that the Board was deadlocked. Plaintiff's representative signed off on the deadlock and closed the case on April 12, 2005. The parties did not enter into any written agreement to extend the deadline for requesting arbitration.

In August 2005, Defendant's representative requested that the Grievant's action be scheduled for another Two-Person Board hearing on August 23, 2005. Plaintiff refused to allow a second Board hearing. On September 12, 2005, five months after the written deadlock decision, Defendant notified Plaintiff of its intention to seek arbitration in the Grievant's action. Plaintiff

---

[4]Step 5 in the Collective Bargaining Agreement states that the Two-Person Adjustment Board must be scheduled fourteen calender days after the receipt of a written answer from a Committee meeting as outlined in Step 4. Although Defendant cites the untimeliness of the Two-Person Adjustment Board meeting, neither Plaintiff nor Arbitrator O'Grady reference this issue in their facts or arguments. Therefore, the issue is not before this Court.

[5] Even though a written request is required by the Agreement, both parties agree that two additional weeks were given to the Grievant to produce phone records. Furthermore, the date the written decision was issued is not before this Court.

objected to the arbitrability because they believed the grievance and request for arbitration were not timely filed in accordance with the terms of the Agreement. A procedural arbitrability hearing was held on July 12, 2006. Both parties stipulated that the procedural arbitrability of the grievance was properly before the arbitrator for a final and binding decision. In reaching a decision, Arbitrator O'Grady's authority was limited to the interpretation and application of the parties' Agreement. The Agreement stated that the arbitrator "shall not have the authority to modify, nullify, ignore, add, or subtract from any provisions of the Agreement or attachments to the Agreement." *Pl's Mot. for Summ. Judg.*, Ex 2. On September 18, 2006, Arbitrator O'Grady issued an award in favor of the Grievant. Arbitrator O'Grady determined that the Grievant filed a timely grievance and timely request for arbitration.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Material

facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**IV. DISCUSSION**

Plaintiff asserts that Arbitrator O'Grady's Award did not draw its essences from the Agreement, and therefore they are entitled to Summary Judgment. First, Plaintiff argues that Arbitrator O'Grady ignored the plain and unambiguous terms of the agreement and issued an Award contrary to those terms. Secondly, Plaintiff alleges that Arbitrator O'Grady exceeded his authority by modifying the terms and conditions of the Agreement. Defendant responds by arguing that Arbitrator O'Grady found the grievance procedure to be unclear and ambiguous. Thus, Arbitrator O'Grady had the authority to consider additional evidence during arbitration. In reviewing these arguments, this Court must decide whether undisputed facts clearly establish that Arbitrator O'Grady ignored the plain language of the Agreement, thereby exceeding his authority. *Osceola County Rural Water Sys., Inc. v. Subsurfco, Inc.,* 914 F.2d 1072, 1075 (8th Cir. 1990). This Court will not determine if Arbitrator O'Grady committed a factual or legal error, as this alone is insufficient to disturb an arbitration award. *Misco,* 484 U.S. at 38.

Although enormous deference is given to the arbitrator, an arbitrator may not ignore the plain language of the contract. *Misco*, 484 U.S. at 38; *see Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1440 (8th Cir. 1992) (The Court concluded that the "arbitrator went beyond the essence of the applicable agreement in crafting this award."). The Federal Arbitration Act ("FAA") provides four bases for setting aside an arbitrator's award[6], and

---

[6] The FAA states, in pertinent part:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration, (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct

7

the 8th Circuit has additionally held that the award must be set aside if it fails to draw "its essence from the collective bargaining agreement." *United Steel Workers of America v. Enterprise Wheel & Car Corp.* 363 U.S. 593, 597 (1960).

"An arbitrator's award draws from the essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Boise Cascade Corp. v. Paper Allied-Indus. Chemical and Energy Workers, (PACE), Local 7-0159*, 309 F.3d 1075, 1080 (8th Cir. 2002) (quoting *Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen*, 39 F.3d 821, 825 (7th Cir. 1994)). Thus, as long as the arbitrator is arguably construing or acting within the scope of his authority, the arbitrator's decision cannot be overturned. *Misco*, 484 U.S. at 38. However, "when the arbitrator's words manifest an infidelity to this obligation, the courts have no choice but to refuse enforcement of the award." *Enterprise*, 363 U.S. at 597; s*ee also Keebler Co. v. Milk Drivers and Dairy Employees Union, Local No. 471*, 80 F.3d 284, 287 (8th Cir. 1996) ("A reviewing court, however, may vacate an arbitration award when the award does not derive its essence from the collective bargaining agreement, or when the arbitrator ignores the plain language of the contract.").

Finally, the Court notes that state contract law governs whether an arbitration agreement is ambiguous. *Stark v. Sandberg, Phoenix, & Von Gontard*, 381 F.3d 793, 801 (8th Cir. 2004)

---

in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10.

8

("We cannot ignore well-settled precedent from this court holding state contract law governs whether an arbitration agreement is ambiguous"); *see also Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001) ("State law governs when an arbitration agreement is valid.") (citing *Baker v. Golf U.S.A. Inc.*, 154 F.3d 788 (8th Cir. 1998)). In order to determine if ambiguity exists, this Court must consider whether the disputed language is reasonably susceptible of more than one construction, giving the words their plain meaning as understood by a reasonable person. *Stark*, 382 F.3d at 801 (citing *Speedie Food Mart Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo.Ct.App. 1991)).

"An arbitrator does *not* construe the contract and does *not* act within his authority when he either ignores unambiguous language or construes ambiguous language without any reference to the parties' intent." *Boise*, 309 F.3d at 1083 (emphasis in original). The arbitrator may consider relevant sources of the parties' intent only to interpret ambiguous language in the contract. *Bureau of Engraving Inc. v. Graphic Comm. Int'l Union*, *Local 1B*, 164 F.3d 427, 429 (8th Cir. 1999). In fact, federal courts have routinely confirmed arbitral awards where the arbitrator has used outside sources for guidance in order to give meaning to ambiguous language. *Boise*, 309 F.3d at 1081; see *Fairview Southdale Hosp. v. Minnesota Nurses Ass'n*, 943 F.2d 809, 812 (8th Cir. 1991).

**A. Timely Filing of Grievance**

In this case, Arbitrator O'Grady did not find the requirements and time limits set forth in the grievance procedure to be clear and unambiguous, as they relate to the initial filing of the grievance. This Court agrees with this conclusion, since there can be more than one meaning for "knowledge of the incident." *See e.g. Stark*, 382 F.3d at 801 ("The test for determining if an

ambiguity exists in a written contract is 'whether the disputed language, in the context of the entire agreement, is reasonably susceptible to more than one construction giving the words their plain meaning as understood by a reasonable average person.'" (quoting *Speedie Food Mart*, 809 S.W.2d at 129)). Although the contract sets forth seven days in which to file a grievance after the grievant "knowledge of the incident," the Agreement does not specifically state what the incident is. Furthermore, there is no explanation within the contract as to when a person has "knowledge of the incident." Therefore, the Agreement is ambiguous on this issue.

Due to the ambiguity of the contract, Arbitrator O'Grady had the authority to interpret the intent of the parties. *Boise*, 309 F.3d at 1081. Thus, Arbitrator O'Grady had the authority to determine that November 1, 2004, the day the Grievant learned of the denial of FMLA and that his termination stood, constituted the day he had knowledge of the incident. Based on this day, the Grievant had seven calendar days to file a grievance. Since he filed his greivance on November 8, 2004, within seven days from knowledge of the denial of FMLA, Arbitrator O'Grady determined the he timely filed the grievance. This decision draws from the plain language of the Agreement, which states the number of days in which to file a grievance. Furthermore, even if this Court does not agree with the date Arbitrator O'Grady's established to begin counting days, his decision must stand since he acted within the authority of the contract in determining the date of the incident. *Misco*, 484 U.S. at 38.

### B. Timely Filing of Request for Arbitration

This Court must next determine whether Arbitrator O'Grady's decision regarding the timely filing of a request for arbitration ignored the plain language of the Agreement. *Id*. Additionally, this Court may not vacate the award simply because it disagrees with Arbitrator

O'Grady's interpretation, unless the interpretation directly contradicts the plain meaning of the Agreement such that it effectively rewrites it. *Boise*, 309 F.3d at 1081 (The Court did not "simply disagree" with the arbitrator's decision, but concluded that he dispensed his own brand of industrial justice). Therefore, this Court must review the language in the Agreement between Plaintiff and Defendant.

The Agreement lists the procedure for filing a grievance. Arbitrator O'Grady found as a fact that in Step 5, the grievance shall be placed on an agenda for a Two Person Adjustment Board. *Pl. Mot. for Summ. Judg.*, Ex. 2. Also, he concluded that a written notice should be issued five days from the Board meeting. *Id*. Next, Step 6 states that "Defendant may submit the matter to binding arbitration provided written notice is given to the Company within thirty (30) calendar days after the written response of Step 5 above." *Id*. Further, Arbitrator O'Grady found that the Agreement clearly states that any extension of time must be made by "mutual agreement of the parties, however, any such extension shall be in writing." *Id*. Although Arbitrator O'Grady found these as findings of fact, he determined that the date from which to begin counting the thirty days started on the day the Plaintiff refused to hear the grievance at a second Board meeting. *Id*. There is no basis in the agreement for this finding.

Arbitrator O'Grady's statement that Plaintiff's refusal to hear the grievance at a second Two-Person Board Meeting began the thirty days in which to request arbitration masquerades as a finding of fact. Arbitrator O'Grady "did not have authority to alter the agreement by interpreting unambiguous language in a way contrary to its plain meaning, while attempting to characterize his actions outside of his authority as fact-finding." *Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1442 (8th Cir. 1992). In *Coca-Cola*, a "last chance"

11

agreement stipulated that the grievant would be terminated if he engaged one violation of a "category A" rule. *Id*. at 1439. When the grievant violated three different rules under category A, the company terminated him. *Id*. Notwithstanding the company's decision, the arbitrator found that the grievant only violated one of the rules. *Id*. at 1442. As a result of his new finding, the arbitrator reversed the discharge. The arbitrator found "as a fact" that the three of the infractions cumulatively represented the catalyst for the discharge and that the grievant would not have been discharged for just one of the infractions. *Id*. The Court stated that "if this were in reality a factual finding by the arbitrator, we would be obliged to give it the highest deference. But labeling this a finding of fact does not make it so." *Id*. Therefore, the Court vacated the award due to the arbitrator disregarding the language of the agreement which provided that one violation of a category A rule would result in termination. *Id*.

In this case, Arbitrator O'Grady did not have the authority to infer from the circumstances that August 23, 2005 was the start date of the thirty days to request arbitration, since the Agreement gives clear direction as to the start date. The Agreement unambiguously states that the "Union may submit the matter to binding arbitration provided written notice is given to the company within thirty (30) calendar days after the written response of Step 5." *Plaintiff's Mot. for Summ. Judg.*, Ex. 1. The written response was accepted on April 8, 2005 by Plaintiff and therefore according to the unambiguous terms of the agreement, and Arbitrator O'Grady's findings, a request for arbitration had to be filed within thirty days of that date. Consequently, stating that an oral extension of time and circumstances allowed for the grievance to remain open can not be a factual finding on which to base his decision. As instructed by the Agreement, after Plaintiff received and accepted Defendant's written statement of closure of the matter, Defendant

was required to request arbitration within thirty days of the written statement. Since Plaintiff received and accepted Defendant's written statement on April 12, 2005, the Agreement designated this date as the starting point for thirty days to request arbitration. If the Court were to allow Arbitrator O'Grady's award to stand, the provisions in the Agreement would lose validity and would be effectively rewritten.

As with the court's decision in *Coca-Cola*, Arbitrator O'Grady cannot rewrite the contract by stating that the circumstances allowed the grievance period to remain open. The contact simply does not allow for this finding. Based on the plain language in the Agreement, Arbitrator O'Grady did not have the authority to review the intent of the parties, since the Agreement provides for a specific date to begin counting the thirty days. Likewise, the Agreement has no provision for oral extensions of time, on which Arbitrator O'Grady based his decision. Thus, Arbitrator O'Grady did not have the authority to determine that the Grievant's circumstances surrounding the production of phone records constituted an extension of time.[7] As a result, Arbitrator O'Grady did not draw his decision for the plain language of the contract.

## V. CONCLUSION

Based on the ambiguous language of the Agreement in regards to the date of the incident, Arbitrator O'Grady possessed the authority to review outside circumstances in order to interpret the contract. Thus, his decision that the Grievant filed a timely grievance must stand. However, since the language of the Agreement is unambiguous in regards to when the thirty days to request

---

[7] Even if the Court concedes that this was a legitimate extension, as found by Arbitrator O'Grady, by its terms it gave the Grievant two weeks to produce records. The Grievant did not file a request for arbitration within thirty days of the end of the two week extension, but rather filed it several months later.

13

arbitration begins, Arbitrator O'Grady could not review additional circumstances to interpret the contract. Therefore, Arbitrator O'Grady's award must be vacated, and Plaintiff's Motion for Summary Judgment is granted.

Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment [doc. #11] is **GRANTED**. The arbitrator's award of September 18, 2006 is vacated.

So Ordered this 30th day of October, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE